PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee, *v.* GIORGETTI & CO., LTD., Defendant and Appellant.

No. 6109. Argued November 23, 1933.—Decided January 22, 1934.

*J. H. Brown, C. Ruiz Nazario,* and *G. E. González* for appellant. *B. Horton, Attorney General,* and *M. Rodríguez Serra, Assistant Attorney General,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

The plaintiff in this case, which is a summary action of unlawful detainer, alleges that it holds the full ownership of the lands designated as "Caño o Laguna de los Tiburones"; that the defendant, Giorgetti & Co., Ltd., has been in actual possession for some time of a portion of said lands described in the complaint; and that the defend-

ant is retaining the material possession of the said parcel without title of any kind, without paying any rent or other consideration to the plaintiff, and against the will of the latter. The whole property known as "Caño de los Tiburones" is described in the third paragraph of the complaint as having an area of 4,206.18 acres (cuerdas). The parcel occupied by the defendant is described in the fourth paragraph as having an area of 3,313.18 acres. The plaintiff seeks a judgment in its favor directing the defendant to vacate the described parcel and if it should fail to do so within the term allowed by statute, that the defendant be evicted from the property by the marshal of the court.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action of unlawful detainer in favor of The People of Puerto Rico, and filed its answer admitting the title of The People of Puerto Rico to the land above mentioned, and that the defendant, on the date of said answer and for some time prior thereto, was in possession of the smaller parcel described in the said complaint, but it averred that such possession dates back to October 16, 1925, by virtue of a sublease made to it by Manuel Mendía Morales, as judicial administrator of the estate of Wenceslao Borda, deceased, in accordance with a deed executed on that date before Notary Clemente Ruiz Nazario, which contract was duly authorized by an order entered by the District Court of San Juan on September 8, 1925. The defendant denied that it was withholding the occupancy or possession of the said parcel without any title or without paying any rent or other consideration to the plaintiff, or against its will, and on the contrary averred that said defendant was then in actual possession of said parcel and had the right to such possession until October 15, 1935, under a sublease made to it by Manuel Mendía Morales as judicial administrator of the estate of Wenceslao Borda, deceased, according to the deed above mentioned; that Wenceslao Borda formerly, and his heirs now, have enjoyed and continue to enjoy the actual possession and occupancy of the

property of 4,206.18 acres owned by the plaintiff within whose area is contained the parcel of 3,313.18 acres, as lessees of The People of Puerto Rico under a contract of lease entered into on September 15, 1907, between the Commissioner of the Interior of Puerto Rico and Wenceslao Borda, which contract was renewed on August 7, 1927, by the said Commissioner of the Interior in compliance with the provisions of the Joint Resolution approved by the Legislature of Puerto Rico on February 11, 1908; that said lease contract was in full force and effect on the date of the filing of the complaint and its term had not yet expired, and nor would it expire, until September 14, 1947. The defendant also averred that it had been paying to the plaintiff, through the Treasurer of Puerto Rico, on behalf of Wenceslao Borda and his heirs, all the taxes which the Auditor of Puerto Rico heretofore fixed as rental payable at the end of each year on the property described in the fourth paragraph of the complaint from July 1, 1923, until the present time, in accordance with the provisions of section 3 of the said Joint Resolution of February 11, 1908.

The defendant specially alleged that The People of Puerto Rico, under date of July 30, 1930, instituted an action in the District Court of San Juan against Wenceslao Borda, Jr., Joseph W. Borda, Emilia Borda, heirs of Wenceslao Borda, and Giorgetti & Co., Ltd., and admitted in the complaint filed on that date that Wenceslao Borda, his heirs, and Giorgetti & Co., Ltd., have been and were then in possession of the same property described in the third paragraph of the complaint herein, and that said possession originated in a lease granted by The People of Puerto Rico to Wenceslao Borda on September 15, 1907.

On the basis of the above averments, the defendant maintains that (a) the possessory action has prescribed in accordance with subdivision 1 of section 1869 of the Civil Code of Puerto Rico; (b) the action of unlawful detainer does not lie because the defendant holds the actual possession of the

property pursuant to a title and payment of the corresponding rent or other consideration; (c) that the court can not, in this summary action of unlawful detainer, annul the title of the defendant, and much less that of the heirs of Wenceslao Borda, to the possession of the parcel in question, as such annulment could only be decreed in the corresponding plenary suit against all the parties whose rights would be affected by the annulment of said title or titles; and (d) that in order to render judgment in favor of the plaintiff herein, the annulment of the rights of the heirs of Wenceslao Borda, who are not parties to the present action, necessarily would be unavoidable, said rights having arisen out of the lease contract of September 15, 1907, renewed on August 7, 1924, in accordance with the Joint Resolution of February 11, 1908; and that any judgment so rendered in favor of The People of Puerto Rico would deprive the heirs of Wenceslao Borda of their property without due process of law.

In support of its allegations, the defendant offered in evidence a contract entered into by L. H. Grahame, Commissioner of the Interior, and Wenceslao Borda. In said contract, the Commissioner of the Interior declared that pursuant to the authority conferred upon him by law, specially section 24 of the Organic Act of Puerto Rico, approved on April 12, 1900, and section 135 of the Political Code of Puerto Rico, he leased to Wenceslao Borda all the swamp and uncultivated lands included in a parcel owned by The People of Puerto Rico, consisting of about 6,000 acres, located in the districts of Arecibo and Manatí, known under the general designation of "Caño o Laguna de los Tiburones," part of which is under water. The lease was for a term of 15 years beginning on September 15, 1907, until September 15, 1922. It was a condition of and consideration for said contract that the lands or some part thereof, as far as practicable, be drained, reclaimed, and put in suitable condition for agricultural cultivation by Borda. It was also agreed by the parties

that a complete survey should be made of all the territory known as "Caño o Laguna de los Tiburones" at the expense of Borda, who accordingly undertook to deposit with the Treasurer of Puerto Rico the sum of $1,000, to cover the expenses of the survey, and authorized the Commissioner of the Interior to draw against that fund or against such part thereof as might be necessary in order to make a complete survey and to prepare maps of the land. It was also agreed that the Commissioner of the Interior would allow Borda to use said land during a period of three years from the date of the contract for the purpose of conducting experiments and constructing such drainage or drying works as Borda might deem proper in order to determine whether or not it was possible to reclaim, drain, and cultivate the said lands. It was also agreed that if, at the expiration of the three years, Borda was not able to drain or reclaim a reasonable portion of the land and that if such drainage project did not prove feasible, then the contract would be canceled or invalidated by the Commissioner of the Interior, with the approval of the Executive Council of Puerto Rico. It was also agreed by the same contract, that Borda would begin the work of investigation and experimentation on the lands within a term of six months from the date of the deed and that if, within twelve months, sufficient progress had not been made in the investigation and experiments on the land, to determine whether or not it could be improved and drained, then, the Commissioner of the Interior, with the approval of the Executive Council, would cancel and invalidate the contract. Finally, it was agreed by both parties that the contract would be submitted for the approval of the Executive Council of Puerto Rico and that immediately after such approval, it would be considered as in full force and effect.

On February 11, 1908, the Legislature of Puerto Rico passed a joint resolution authorizing the Commissioner of the Interior to extend the original contract of lease for a term of twenty-five years, subject to the condition that said

extension would not be valid unless the lessee, before the expiration of the first fifteen years of the lease, had drained and placed in condition of cultivation not less than one-half of the area of the lands covered by the lease, as shown by the official survey. Said extension would be held to apply only to the number of acres that should have been drained and placed in condition for cultivation at the end of the term of fifteen years provided for the original lease. It was also provided that at the end of the first fifteen years of said lease, the cultivated lands and those in condition for cultivation would be assessed, and that the lessee would pay the tax fixed by law on the amount of said assessment.

A communication addressed under date of August 7, 1924, by Guillermo Esteves, Commissioner of the Interior, to Wenceslao Borda, was offered in evidence by the defendant and admitted by the court; it reads as follows:

"You are hereby notified that, from the survey and examination made by this Department of the lands owned by The People of Puerto Rico and known as 'Caño o Laguna de los Tiburones,' located in the Municipalities of Arecibo and Barceloneta, consisting of 4,206.18 acres which were leased to you by the Commissioner of the Interior under contract of September 15, 1907, it appears that 351.15 acres of those lands are planted in sugar cane and that the remaining 3,855.03 acres have been drained and are in condition for cultivation, I have deemed it proper to extend, as I do hereby extend, the said contract of lease for a term of twenty-five years, that is, until September fourteen, nineteen hundred and forty-seven."

The defendant also offered as evidence a deed of October 16, 1925, executed before Notary Clemente Ruiz Nazario, whereby Manuel Mendía Morales, as judicial administrator of the Estate of Wenceslao Borda, deceased, under the authority of the District Court of San Juan, leased to Giorgetti & Co., Ltd., seven parcels of land included within the property leased to Wenceslao Borda by the People of Puerto Rico, for a term of ten years and for an annual rent of $10;000, payable at the end of every semester, the lessee agreeing to pay all the taxes levied on the leased lands. The

parcel involved in this suit which is described in the complaint, formed a part of the land leased to the defendant by the judicial administrator of the Borda estate.

Evidence was also offered to show that the defendant had paid to the People of Puerto Rico the tax assessed by the Auditor of Puerto Rico in accordance with section 3 of the Joint Resolution of February 11, 1908.

Finally, the defendant offered in evidence the record of the action brought on July 30, 1930, before the District Court of San Juan, by The People of Puerto Rico against the heirs of Borda and others, and the complaint in the instant case.

We have extended somewhat in our statement of the facts alleged and of the evidence introduced before the court below, in order to stress the various issues to be determined in this unlawful detainer proceeding. Several errors are assigned by the defendant and appellant as committed by the lower court, and in all of the assignments questions are raised that deserve careful consideration. We shall begin with the fifth assignment of error because, if it is decided that the action of unlawful detainer does not lie, it becomes unnecessary to determine any other question.

The defendant urges that the judgment rendered by the lower court is erroneous and contrary to law in that it decrees and grants the dispossession sought by the plaintiff in the summary proceeding despite the fact that the defendant has alleged and proved the existence of an issue of title which can only be considered and determined in the ordinary course of proceedings in a plenary suit.

The ownership rights of The People of Puerto Rico in the parcel occupied by Giorgetti & Co., Ltd., are not questioned in this case. The defendant does not deny the title of the plaintiff to the property; but it argues that it holds possession as sublessee of the heirs of Borda, who are not parties to this proceeding, and that the action of unlawful detainer does not lie. The plaintiff alleges in its complaint that the defendant withholds the occupancy or actual posses-

sion of the property without any title thereto, without paying any rent or other consideration whatsoever to the plaintiff, and against the will of the latter. According to the statute, the action of unlawful detainer will lie against the tenants, settlers (*colonos*), and other lessees of property, and against the administrators, agents, keepers or guards placed in charge of the property by the owner thereof, or any other person who retains the material possession thereof, or enjoys the same by sufferance, without paying any rental or other consideration whatsoever. It should be noted that the remedy lies against persons holding possession under the owner by virtue of a contract and that in addition the statute provides two grounds for said action, the detention of the material possession of the property without any contractual basis, and the holding of such possession at sufferance.

As stated in *Cerra* v. *González*, 29 P.R.R. 270, 273, possession at sufferance generally originates from acts of generosity, or mere tolerance, or the negligence or ignorance of the owner. In the last of these cases the detention is manifest.

It is evident that the defendant does not hold possession in this case through acts of generosity or mere tolerance on the part of The People of Puerto Rico. Its alleged right to possession arises out of a contract which, it is claimed, the plaintiff entered into with Wenceslao Borda, who in turn derives his right from the plaintiff itself. This court, in the case of *Roger* v. *López Acosta*, 28 P.R.R. 523, said:

"The doubt we entertained was whether this unlawful detainer suit was of a precarious nature or not. If it was, then the complainant had no right to begin his action in a municipal court. From the complaint filed in the municipal court, which is the only matter we have a right to consider, it appears that the complainants recognized and ratified a lease made by another in their name for six months, at a monthly rental of $38, but refused to agree to the extension. Now while there might have been a question of whether an exten-

sion was granted or not, or whether there was not a tacit renewal (*tácita reconducción*), the fact is set forth in the complaint that the complainants were trying to put an end to a lease, the defendants being notified to quit. The defendant was claiming as a lessee under a fixed amount of rental and the second cause of action set up a failure to pay rent. Where a tenant holds over, such possession is not generally of a precarious nature. Otherwise every attempt to recover at the expiration of a lease would at the election of the tenant become precarious and defeat the jurisdiction of a municipal court.''

From the opinion in the case of *Cerra* v. *González, supra,* we copy the following:

''And it can not be said that the defendant detained the material possession of the property or held it at sufferance without paying any rent, and that the action of unlawful detainer was brought against him as such detainer and not as a lessee. That theory is erroneous and can not support the jurisdiction of the District Court of San Juan. The defendant was sued as lessee, and for the very reason that he was such lessee, paying thirty dollars a month, he was given notice that the contract terminated on the last day of November, 1920. The termination of the contract by that notice did not take from the defendant his character of lessee for the same reason that the expiration of a stipulated term in a lease contract does not change a defendant's status as lessee. The legal effects of the extinction of a contract of lease by the expiration of the stipulated term, or by notice when no term has been fixed, are identical, and in either case the action of unlawful detainer should be brought in the corresponding municipal court when the annual rent does not exceed one thousand dollars, as in this case. The expressions 'lessee'' and 'possessor at sufferance' are entirely different and are clearly defined in section 2 of the Unlawful Detainer Act. The defendant's possession originated from a contract of lease and although it may be unlawful, it can not be called at sufferance.''

Nor does it appear from the evidence that the defendant is detaining the material possession of the property within the meaning of the verb ''to retain'' as used in the act establishing unlawful detainer proceedings. Regarding the legal meaning of the term ''detention'' (*detentación*), we tran-

scribe below what the *Enciclopedia Jurídica Española* states in this connection, at page 907, volume 11:

"In the *Dictionary* of Escriche, *detention* (*detentación*) is defined as 'the holding or possession of a thing for another,' and by the noun *detainer* (*detentador*) is meant 'a person who holds or possesses something in another's name, as for example, a bailee, a depositary, and others who have a standing in court to ask for relief against the persons who disturb them in their occupancy.'

"That is not, however, the exact juridical meaning, nor even the common understanding, of the term which is the object of this article. *Detention* (*detentación*) properly means in a grammatical sense, the occupancy or possession of a thing or right, which is not to be confused with the *natural possession* defined by section 430 of the Civil Code; juridical relationships may be and are derived from this natural possession and not from the actual occupancy; and if this concept is further restricted, by *detention* is frequently understood, in ordinary language and in the laws, the action and effect of a person's withholding without right something that does not belong to him.

"*Detentare* (as Bekker points out with good reason when he complaints of the defects of the Roman possessory terminology) and its derivatives *detentio, detentatic, detentator,* are very rare terms; in the few instances that they appear, they are used incidentally and with reference to other matters; but never exclusively in connection with the possessory theory; *detentator* is only found twice, and then in the Code, not in the Digest. It may be vaguely inferred that, although *detentio* means the act of *tenere* and is therefore different from *possessio, detentatio* and its other derivatives only mean a retention and conservation of a thing regardless of the justice thereof, the greater part of the time entirely without justification."

We agree with the concept of the term detention as expressed by the *Enciclopedia Jurídica*. Natural possession creates juridical relationships which do not flow from the strictly material possession. The natural occupancy of a thing carries with it the actual possession, but the latter may exist independently of natural possession. The act of an intruder, for example, in taking a thing results in an actual possession which creates no juridical relationships. The unlawful withholding by one person of the possession of a

thing belonging to another constitutes a detention within the meaning of that term as used in the Unlawful Detainer Act.

The possession of the defendant herein is not without a basis. It can not be said that it has unjustly taken something which does not belong to it and that it retains the material possession of the property, since it is in possession thereof as lessee or sublessee of the successors in interest of the very person who, it is alleged, occupied the property under a contract entered into with The People of Puerto Rico. We are of opinion that if the defendant does not retain the property or possess it at sufferance and that if the action is not founded on some contractual relationship, it must necessarily be held that the evidence does not support the allegations of the complaints. It is not The People of Puerto Rico but the defendant who states that it holds possession under a contract, proof of which has been submitted to the consideration of the court. The plaintiff has attempted to disregard all these transactions by filing a complaint in which it ignores all the acts executed by it and which possibly may have led the defendant, relying perhaps on the legality of such acts, to enter into the alleged contract whereby the latter was put in possession of the property the object of the present unlawful detainer proceedings.

The question involved in the case of *Maceira* v. *Pietri et al.*, 30 P.R.R. 545, cited by the lower court, can not be assimilated to the issues which have been raised in the case at bar. In the former case this court declared that a lessor should not be deprived of the right to recover the possession of property through unlawful detainer proceedings merely because the lessee claims the existence of a lease contract. The defendant in that case alleged and attempted to prove that he had entered into an oral contract with the owner of the property, through his agent. It was not shown that said agent had authority to bind his principal, and this court, in reversing the judgment of the lower court, decreed the dispossession sought. In the instant case the evidence is

documentary, authentic in its entirety and largely consists of official documents signed by the Commissioner of the Interior who acted on behalf of the plaintiff. The character of this evidence and the juridical aspects of the issues involved show that the action of unlawful detainer is not the proper proceeding to consider and determine questions of such importance.

In the case of *Veve* v. *Fajardo Sugar Growers' Assn.*, 18 P.R.R. 277, this court said:

"The Supreme Court of Spain, in a judgment of December 2, 1904, laid down the doctrine that where an action of unlawful detainer is instituted as a means of reinstating the owner of an estate in the full exercise of his rights of ownership, when the lessee openly and knowingly fails to comply with the obligations of the contract, or when the term of the lease has expired, it is necessary for the success of the action, according to the constant jurisprudence of the aforesaid court, that the relations existing between the lessor and lessee be of such a nature that the violation of the obligations stipulated, either with respect to the payment of the rent or compensation agreed upon, or regarding any other obligation as to the mode of conducting the leased estate, should be clearly established at the trial; for when the respective obligations are of such a nature or so special or complex as to preclude all reasonable possibility of estimating with certainty the purpose and importance thereof, the summary proceeding of the action of unlawful detainer would be converted into a means of obtaining, with certain violence, the rescission of a contract without the safeguards of defense and pleading afforded by ordinary actions.

"In another judgment of May 29, 1906, the same court held that the action of unlawful detainer lay only when between the lessee and lessor, or the owner of the estate and the person who occupies it at sufferance, there exist no legal relations other than such as are derived from said character, and when with respect to them no reasonable doubts are raised requiring an examination and discussion possible only in the prosecution of the proper declaratory action. We consider this doctrine good law."

It should be noted that the person who originally contracted with The People of Puerto Rico and who is a real

party in interest, has not been made a defendant in this suit. It is true that Giorgetti & Co., Ltd., could have asked that the heirs of Borda be summoned to protect its rights, but the fact that it failed to do so does not mean that the plaintiff can disregard a party whose intervention is necessary in order to determine the issues which have arisen in this suit. The defendant derives its rights from the heirs of Borda, and to deprive it of the possession of the property by an adverse judgment would be equivalent to depriving the said heirs of that possession and of their rentals. It can not be argued that if the dispossession were finally decreed, the property would simply change hands, without affecting the rights of the heirs of Borda, in the first place because, as we have already stated, said heirs would lose the benefits of the rentals, and in the second place because Giorgetti & Co., Ltd., holds possession in the name of the heirs of Borda whom it acknowledges as the lessors, while the possession of the People of Puerto Rico, as shown by the record, would be adverse to that of said heirs. In short, a judgment in favor of the plaintiff would deprive the heirs of Borda, without being heard, of the possession and enjoyment of the property, that is, of all that was conveyed to them by The People of Puerto Rico under the contract entered into in 1907 which, it is alleged, has been subsequently extended. We are proceeding on a hypothesis. Nothing is further from our mind than to consider on the merits the questions raised by the pleadings and the evidence. Whatever might be the final determination of the matter in controversy, whether the case is to be finally decided in favor of the plaintiff or of the defendant, the fact is that the heirs of Borda are necessary parties and that the juridical relations which may have been created by the transactions entered into between The People of Puerto Rico and Wenceslao Borda with regard to the property known as Caño o Laguna de los Tiburones must be determined in a plenary suit.

The judgment appealed from must be reversed.